**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

PETRA BROKKEN,

                                                    Civil No. 23-1469 (JRT/DJF)
                              Plaintiff,

v.

                                            **MEMORANDUM OPINION AND ORDER**
HENNEPIN COUNTY,                            **GRANTING DEFENDANT'S MOTION TO**
                                            **DISMISS**

                              Defendant.

---

Gregory M. Erickson and Vincent J. Fahnlander, **MOHRMAN, KAARDAL, & ERICKSON, P.A.**, 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402, for Plaintiff.

Katlyn Lynch, **HENNEPIN COUNTY ATTORNEY'S OFFICE**, 300 South Sixth Street, Minneapolis, MN 55487, for Defendant.


Plaintiff Petra Brokken is a former Hennepin County public defender.  After the implementation of Hennepin County's COVID-19 Vaccine Mandate, Hennepin County offered Brokken weekly testing as a religious accommodation to the vaccine.  Instead of testing, she resigned her position because of her religious objections to testing.  She then filed this action against Hennepin County, alleging she was constructively discharged and bringing claims under Title VII, the Minnesota Human Rights Act ("MHRA"), the American with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and Minn. Stat. § 12.39.  Because Brokken fails to plead an adverse employment action as

required for all her claims and because her claims suffer from other individual flaws, the Court will grant Hennepin County's Motion to Dismiss.

## BACKGROUND

Brokken was employed as a public defender for Hennepin County from 1996 to her retirement in 2022. (Compl. ¶ 14, May 19, 2023, Docket No. 1.) In response to the COVID-19 pandemic, Hennepin County announced and implemented a Vaccine and Testing Policy ("Policy") in the fall of 2021 requiring employees to either obtain a COVID-19 vaccine or test weekly. (*Id*. ¶¶ 1, 18; Decl. Katlyn Lynch ("Lynch Decl.") ¶¶ 2–3, Exs. 1–2, July 21, 2023, Docket No. 8.) The Policy provided that unvaccinated staff members could be subject to discipline, including termination, for failing to test. (Lynch Decl. ¶ 2, Ex. 1 at 3.)

Brokken requested a religious exemption to both obtaining the vaccine and submitting to weekly testing because of her beliefs in the energetic interconnectedness of the universe, bodily autonomy and sanctity, and freedom from nonconsensual government interference over her life. (Compl. ¶¶ 1, 41, 44, 49, Exs. 2–3.)

Hennepin County granted Brokken's religious exemption from vaccination and accommodated her testing objection by allowing her to temporarily work remotely at a suburban office. (Compl. ¶¶ 1, 3, 24.) As part of the remote placement, Hennepin County informed Brokken that upon resumption of in-person appearances, the testing mandate would apply to her. (*Id.* ¶ 4; Lynch Decl. ¶ 5, Ex. 4 at 2.)

Later that fall, Hennepin County amended the Policy to make COVID-19 vaccines mandatory ("Vaccine Mandate") at Brokken's office starting in June 2022. (Compl. ¶¶ 3–

4, 27, 31; Lynch Decl. ¶ 4, Ex. 3 at 2.)  The Vaccine Mandate also allowed for discipline, including termination, for noncompliant staff.  (Lynch Decl. ¶ 4, Ex. 3 at 3.)  Brokken renewed her religious exemption request for the Vaccine Mandate, which Hennepin County granted by providing her with a testing accommodation in lieu of vaccination when she was required to appear in-person.  (Compl. ¶¶ 3–5, 32.)

In June 2022, Hennepin County informed Brokken that she would no longer be able to work entirely remotely.  (Lynch Decl. ¶ 5, Ex. 4 at 2.)  A return to in-person work meant Brokken would have to test weekly.  (*Id.*)  Hennepin County warned Brokken that failure to comply with the weekly testing requirement would result in her termination.  (*Id.*)  She was further informed that termination would involve loss of her accrued vacation and sick hours, which exceeded 1,285 hours.  (Compl. ¶¶ 4, 35.)

Instead of testing, Brokken resigned her position.  (Lynch Decl. ¶ 6, Ex. 5 at 2.) After her resignation, Brokken filed this action alleging she retired under duress.  (Compl. ¶ 35.) She brings discrimination claims under Title VII of the Civil Rights Act of 1964, the MHRA, the ADA, the ADEA, and a wrongful discharge claim pursuant to Minn. Stat. § 12.39.  (*Id.* ¶ 8.)

## DISCUSSION

### I.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint

states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in plaintiff's favor. *Ashley Cnty., v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include "more than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The Court may also consider matters of public record and exhibits attached to the pleadings, as long as those

documents do not conflict with the complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).[1]

## II.   ANALYSIS

Primarily, the parties dispute whether Brokken has sufficiently alleged an adverse employment action, which is a dispositive issue on all her claims.  Notwithstanding this initial roadblock, her claims also suffer from individual errors that require dismissal.

### A.  Adverse Employment Action

Each claim Brokken alleges requires a finding of an adverse employment action.[2] An adverse employment action is defined as a "tangible change in working conditions that produces a material employment disadvantage, including. . . circumstances amounting to a constructive discharge." *Jackman v. Fifth Jud. Dist. Dept. of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013).  The standard for constructive discharge is met when a plaintiff can show that "(1) a reasonable person in [their] situation would find the working conditions intolerable, and (2) that the employer intended to force [them] to quit."  *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007).  A plaintiff will not prevail

---

[1] Brokken attached three exhibits to the Complaint: her Equal Employment Opportunity Commission ("EEOC") charge of discrimination form and two affidavits explaining her religious exemption requests.  (Compl., Exs. 1–3.)  Hennepin County filed seven exhibits embraced by the Complaint: Hennepin County policy documents, correspondence with Brokken, and two publicly available guidance documents from the EEOC.  (Lynch Decl. ¶¶ 2–8, Exs. 1–7.)

[2] The ADA claim requires a "tangible injury" which is analogous to an adverse employment action.  *Cossette v. Minn. Power & Light*, 188 F.3d 964, 971 (8th Cir. 1999) (using tangible injury and adverse employment action interchangeably).

if they are "unreasonably sensitive" to the work environment as the court must apply an objective standard. *West v. Marion Merrell Dow, Inc*., 54 F.3d 493, 497 (8th Cir. 1995). If resignation is a "reasonably foreseeable consequence" of the employer's conduct, intent can be inferred. *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996).

The Court must first analyze whether Brokken has adequately pled an objectively intolerable working environment. The only possible intolerable working condition would be Brokken's requirement to test weekly when working in-person.[3] While Brokken seemingly tries to argue that the loss of retirement benefits was an intolerable working condition, that risk arose only when she refused to test. And the Eighth Circuit has held that loss of pay alone is insufficient to create a constructive discharge. *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000).

Additionally, Brokken does not present information that testing weekly as a vaccine exemption accommodation is objectively unreasonable. She presents information for why she as an individual considered it problematic, but nothing in the Complaint indicates that a reasonable person in her shoes would have felt that

---

[3] Brokken claims to have pled "harassing statements" as other adverse employment actions apart from constructive termination. (Pl.'s Mem. Opp. Mot. Summ. J. at 6–7, Aug. 11, 2023, Docket No. 14.) The statements reflect further support for her constructive discharge allegation. Brokken makes one potentially distinct allegation about notice for a board meeting at which the Vaccine Mandate was discussed but does not elaborate further. Without more information, the Court finds this statement insufficient to serve as the basis for an adverse employment action.

resignation was their only option.  It is insufficient for Brokken to rely on her own subjective beliefs when claiming an objectively intolerable working condition.  *Marion Merrell Dow, Inc*., 54 F.3d at 497.  And the Court will not assume objective intolerability when she was granted an exemption to vaccination and provided with many non-invasive testing options.  Because Brokken fails to plead an objectively intolerable working condition, and thus an adverse employment action, all her claims must be dismissed.

Even if Brokken had pled sufficient facts of an objectively intolerable working condition, the Court finds the Complaint completely devoid of any information suggesting that Hennepin County intended the Policy or Vaccine Mandate to pressure Brokken into resigning.  Hennepin County implemented safety policies in response to a developing global crisis that equally applied to all employees. *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981) (finding that identical treatment of all employees rebuts the intent element of a constructive discharge allegation).  In fact, if anything, Hennepin County's willingness to review and grant Brokken's religious exemptions to the Policy and Vaccine Mandate, provide several different testing alternatives, and allow for remote work when possible, indicates an intent to keep Brokken employed.  Brokken's failure to plead any facts about Hennepin County's intent to do otherwise means that she has failed to plead an adverse employment action.

Brokken relies heavily on the contention that these issues should not be decided on a motion to dismiss.  But an adverse employment allegation can be evaluated at the

motion to dismiss stage and must be dismissed if the claim fails to meet the required pleading standards.[4]

Because an adverse employment action is required for all of Brokken's claims, and her pleadings are insufficient, the Court will grant Hennepin County's Motion to Dismiss. Even if Brokken had properly pled an adverse employment action, her claims also contain individual flaws which the Court will evaluate below.

### B. Title VII Claim

Brokken brings two Title VII claims: (1) direct religious discrimination and (2) failure to accommodate. Each contains insurmountable errors beyond Brokken's failure to adequately plead an adverse employment action.

#### 1. Direct Religious Discrimination

To make a prima facie showing of direct religious discrimination under Title VII, a plaintiff must show: "(1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015). Courts can infer discrimination when similarly situated employees who are not part of the protected class are treated differently. *Id.*

---

[4] *See, e.g.*, *Norgren v. Minn. Dep't of Hum. Servs.*, No. 22-489, 2023 WL 35903, at *4 (D. Minn. Jan. 4, 2023) (dismissing for failure to establish adverse employment action); *Anderson v. Ford Motor Co.*, No. 21-701, 2022 WL 20401477, at *3 (W.D. Mo. Mar. 25, 2022) (same).

Brokken would like the Court to believe that she was treated differently based on her religion, in that Hennepin County singled her out because of her religious beliefs about COVID-19 testing. However, that characterization neglects important context—that Hennepin County granted her a religious exemption to vaccination. Moreover, Brokken's testing requirement stemmed not from her religion but from her vaccination status. Additionally, the Vaccine Mandate applied to all employees, and weekly testing served as a standard accommodation for those with vaccine exemptions. A policy applied across the board to all employees makes an inference of discrimination difficult. *See, e.g.*, *Shirrell*, 793 F.3d at 887–88 (finding circumstances did not give rise to an inference of discrimination because there were no similarly situated employees outside the protected class who were treated differently than the claimant). Because Brokken did not suffer an adverse employment action and because she did not adequately plead that she was treated differently from those outside of her protected class, the Court will dismiss her Title VII direct discrimination claim.

### 2.  Failure to Accommodate

Title VII requires covered employers to provide reasonable accommodation to employees' sincerely held religious beliefs. 42 U.S.C. § 2000e(j). The plaintiff must show that: (1) she has a bona fide religious belief that conflicts with the employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failing to comply with the conflicting requirement. *Jones v. TEK Indus., Inc.,* 319 F.3d 355,

359 (8th Cir. 2003).  If a plaintiff establishes a prima facie showing of discrimination, the burden shifts to the defendant to show that it could not reasonable accommodate the beliefs without undue hardship.  *Kiel v. Mayo Clinic Health System Se. Minn.*, No. 22-1319, 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023).

Protected bona fide religious beliefs must be rooted in religion, and not merely personal preference.  *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000); *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 751 (8th Cir. 1997).  In making the "difficult and delicate" determination of whether a belief is religious, courts cannot question the validity of the plaintiff's beliefs, nor question the logic, consistency, or comprehensibility of those beliefs.  *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981).  Courts are to consider whether the beliefs deal with "fundamental and ultimate questions having to do with deep imponderable matters," whether the beliefs are "comprehensive in nature" and whether the beliefs can be recognized by "certain formal and external signs."  *Love*, 216 F.3d at 687 (quotation omitted).

The Court has been hesitant to hold broad sweeping objections to vaccinations as religious in nature as opposed to personal or medical.  *Kiel*, 2023 WL 5000255, at *8 (describing an objection that the "body is a temple" was too broad to function as a religious objection).  Brokken's claims that saliva testing violates her religious beliefs because she cannot "provide [her] DNA or other biological materials by force or coercion," and she disagrees with the development of the test's "use and treatment of

-10-

cows." (Compl., Ex. 3 at 2–3.)  The Court is not convinced that Brokken's belief about providing her biological materials rises to the level of a bona fide religious belief because her belief in maintaining her biological materials is akin to broad statements that the body is a temple, which have previously been rejected.[5]  *Kiel*, 2023 WL 5000255, at *8; *Blackwell v. Lehigh Valley Health Network*, No. 22-3360, 2023 WL 362392, at *5–6 (E.D. Penn. Jan. 23, 2023); *McKinley v. Princeton Univ.*, No. 22-5069, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023).

Setting aside the bona fide religious belief discussion, Brokken must also demonstrate that her beliefs conflict with an employment requirement.  *Jones*, 319 F.3d at 359.  Because Hennepin County granted Brokken's exemption to the COVID-19 vaccination, the only possible employment requirement that Brokken can point to is weekly testing.

Her beliefs are unlinked in two ways.  First, Hennepin County offered at-home testing so it is unclear how that would constitute "providing" Brokken's biological materials to anyone.  Brokken needed to demonstrate a conflict between her belief to not provide her biological information to anyone and the requirement to complete an at-home saliva test, which she did not.  Second, when people claim a religious objection to

_____

[5] Brokken's objection to the use of cows is certainly more specific and may be a bona fide religious belief.  Because the Court finds that it is insufficiently connected to the testing requirement, it need not decide the issue of whether her belief about the treatment of cows is a bona fide religious belief.

something because of how it has been produced, the Court has been unwilling to find that is a sufficient conflict.  Brokken may object to how the tests are developed but that does not specifically relate her religious belief to taking the test.  *Cf. Kiel*, 2023 WL 5000255, at * 8 ("A religious opposition to abortion is different from an opposition to vaccines that were potentially developed using a fetal cell line.").

Assuming Brokken sufficiently demonstrated a conflict between her bona fide religious belief and the testing requirement, the burden would then shift to Hennepin County to show that it could not reasonably accommodate Brokken's religious beliefs without undue hardship.  *Id.* at *7.

The reasonable accommodation provision under Title VII provides that while employers must make reasonable accommodations for employees' bona-fide religious practices, employers need not suffer "undue hardship."  *Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011).   Title VII requires a reasonable, not necessarily preferred, accommodation.  *Haliye v. Celestica Corp.*, 717 F. Supp. 2d 873, 879 (D. Minn. 2010).  The Supreme Court recently redefined undue hardship to mean "substantial increased costs in relation to the conduct of [the employer's] business."  *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

Brokken predominantly argues that because Hennepin County previously offered her preferred accommodation, re-offering that accommodation would not present an undue hardship.  Further, she requests that Hennepin County be estopped from even

making an undue hardship argument. She also rests on her argument that the Court is ill-equipped to decide the issue of reasonable accommodation and undue burden at the motion to dismiss stage.

Brokken's first argument that because Hennepin County had previously allowed her to work fully remotely means it could not possibly present an undue hardship is unfounded. The previous accommodation was only permitted during the suspension of in-person hearings. When Brokken was required to appear in-person, it was no longer possible for Hennepin County to continue to provide her the accommodation. Due to the changed circumstances, there is no reason to preclude Hennepin County from arguing undue hardship.

Brokken's argument about the timing of the Court's decision is also unfounded. Courts have determined that when the only possible accommodation presents an undue hardship, granting a motion to dismiss is appropriate. *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, No. 22-10643, 2023 WL 3628151, at *5–6 (S.D.N.Y. May 5, 2023) (finding an accommodation of no in-person work for a critical care nurse presented an undue hardship as a matter of law). If the litigation were to proceed, undue hardship may best be evaluated after more factual discovery. However, because Brokken's failure to accommodate claims fails as a matter of law as she has not plead her prima facie case by demonstrating a conflict between her religious beliefs and saliva testing, the Court need

not reach the reasonable accommodation and undue hardship analysis. As a result, the Court will dismiss the Title VII failure to accommodate claim.

### C. Minnesota Human Rights Act Claim

The Eighth Circuit has determined that the same analysis should apply to MHRA claims as apply to Title VII. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). As such, the above analysis applies to Brokken's religious discrimination claim under the MHRA and requires dismissal of this claim.

Brokken's failure to accommodate claim under the MHRA raises additional questions not addressed under Title VII. Courts in this District have reached conflicting conclusions and the Eighth Circuit has not yet weighed in on whether a failure to accommodate claim can be brought under the MHRA. It is undisputed that the MHRA does not affirmatively require employers to accommodate religious beliefs. *Kiel*, 2023 WL 5000255, at *10. The court in *Kiel* found it persuasive that the MHRA did affirmatively require employers to accommodate for disabilities but not religious objections. *Id.* By contrast, the court in *Lee v. Seasons Hospice* found a failure to accommodate claim in the MHRA by citing to the fact that Title VII imposed a duty to accommodate before it was explicit in the statute. No. 22-1593, 2023 WL 6387794, at *6 (D. Minn. Sept. 29, 2023).

As the Court declined to do so in *Kiel*, the Court will again decline to add a cause of action for failure to accommodate a religious belief to the MHRA. Without a cognizable claim, the Court will dismiss Brokken's MHRA failure to accommodate claim.

-14-

### D.  Americans with Disabilities Act Claims

Brokken labels her claims under the ADA as discrimination and failure to accommodate, but she predominantly argues an unlawful medical examination claim. Hennepin County responds as if Brokken brought three claims: direct discrimination, failure to accommodate, and unlawful medical examinations.  The Court will address each potential claim but will analyze the direct discrimination and failure to accommodate claims together because they fail for the same reason.

#### 1.  Direct Discrimination and Failure to Accommodate

To establish a discrimination claim under the ADA, a plaintiff must show that she: "(1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability." *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018) (internal quotation marks omitted). A disability is an impairment that substantially limits an individual's ability to perform major life activities.  42 U.S.C. § 12102(1)(A).  The ADA provides that covered employers must provide reasonable accommodations for known limitations of disabled employees unless the employer can demonstrate that the accommodation would impose an undue hardship.  *Id.* § 12112(b)(5)(A).

A key requirement to sustain a disability discrimination claim is that the person allege a disability, which Brokken did not do.  Without alleging how being unvaccinated substantially limits her ability to perform major life activities, Brokken cannot claim it as

her disability. *Kiel*, 2023 WL 5000255, at *12. Because claims for disability discrimination

without a disability fail in logic and in law, the Court will dismiss Brokken's ADA claims for

direct discrimination and failure to accommodate.

### 2. Medical Examinations

Brokken claims that Hennepin County violated the ADA through the Vaccine

Mandate, which she claims constitutes an unlawful medical examination. The ADA

prohibits employers from requiring current employees to undergo medical examinations

or make inquiries regarding a disability of an employee unless it is job-related and

consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). While a plaintiff does not

need to allege a disability under this provision of the ADA, they must have suffered some

tangible injury as a result of the ADA violation. *Hustvet v. Allina Health Sys.*, 910 F.3d 399,

406–07 (8th Cir. 2018).

Federal courts, including in this District, have found that subjecting employees to

COVID-19 vaccination and testing do not constitute an "unlawful medical examination"

under the ADA. *Kiel*, 2023 WL 5000255, at *12; *Kehren v. Olmsted Med. Ctr.*, No. 22-1560,

2023 WL 2776094, at *6 (D. Minn. Apr. 4, 2023). As a result, because it finds that Brokken

was not subjected to an unlawful medical exam, the Court will dismiss the ADA claim for

unlawful medical examinations.[6]

------

[6] Brokken disputes the application of the business necessity exception. However, the
Court need not reach this inquiry because no medical examination occurred.

**E.  Age Discrimination in Employment Act Claim**

Brokken alleges discrimination based on age under the ADEA.  The ADEA makes it unlawful to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff must show that they: (1) were 40 years or older, (2) were qualified for the job, (3) suffered an adverse employment action, and (4) were treated differently than other similarly situated employees outside of the protected class.  *Thomas*, 483 F.3d at 528.  To prevail in an age discrimination claim under the ADEA, a plaintiff must show that age was the "but-for" cause of the adverse employment action. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011).  Replacement by someone substantially younger allows for the inference of age discrimination.  *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008).

Because Brokken's ADEA claim rests on an adverse employment action which has not been adequately pled, it must fail.  Additionally, any inference of discrimination is lacking because the age of Brokken's replacement is unknown, no facts suggest age was the but-for cause of her resignation, and the Policy and Vaccine Mandate applied equally to employees regardless of age.  Thus, the Court will dismiss the ADEA claim.

**F.  Minnesota Refusal of Treatment Claim**

Brokken alleges wrongful discharge under the Minnesota Refusal of Treatment

Statute, Minn. Stat. § 12.39.  Minn. Stat. § 12.39 states in relevant part:

> Notwithstanding laws, rules, or orders made or promulgated
> in response to a national security emergency or peacetime
> emergency, individuals have a fundamental right to refuse
> medical treatment [and] testing …. An individual who has
> been directed by the commissioner of health … who refuses
> to submit to [medical treatment and testing] may be ordered
> by the commissioner to be placed in isolation or quarantine.

Apart from the dispute surrounding the voluntariness of Brokken's resignation,

her § 12.39 claim raises several questions.  The first and dispositive question is whether

§ 12.39 includes a private right of action.  It does not.  However, in the interest of

thoroughness, the Court will also analyze the applicability of § 12.39 to this action,

whether Hennepin County acted as an employer or a sovereign, and whether Brokken

was asked to violate the law, a requirement for any wrongful discharge claim.  All three

analyses prompt dismissal of Brokken's § 12.39 claim.

First, the Court finds no private right of action under § 12.39. Two recent District

of Minnesota cases are directly on point as both address a private right of action under §

12.39 in the context of refusing a COVID-19 vaccine.  *Zarn v. Minn. Dep't of Hum. Servs.*,

No. 22-1756, 2022 WL 11227241, at *3 (D. Minn. Oct. 19, 2022); *Collingham v. City of

Northfield*, No. 21-2466, 2022 WL 1558410, at *2 (D. Minn. May 17, 2022).  In both cases,

the courts identified no express or implied private right of action.  *Zarn*, 2022 WL

11227241, at *3 (citing *Collingham*, 2022 WL 1558410, at *2).  Brokken has given the Court no reason to deviate from that interpretation.

Second, the court in *Collingham* unequivocally indicated that § 12.39 applies only during a "national security emergency or peacetime emergency."  2022 WL 1558410, at *2.  Contrary to Brokken's desired reading, the first sentence is best understood to be a recognition of the right to refuse.  *Snell v. Walz*, 993 N.W.2d 669, 674 (Minn. Ct. App. 2023) ("[Section] 12.39 [] protects an individual's fundamental right to refuse treatment despite directive made during a peacetime emergency.")  Even if there was a private right of action under the statute, because § 12.39 only applies during emergencies, Brokken would be unable to sustain it because the COVID-19 emergency had ended when her testing requirement matured.

Third, the Court must assess whether Hennepin County was acting as a sovereign or as an employer.  The Policy and Vaccine Mandate were implemented for employees of Hennepin County, which the Court finds to be strong evidence that Hennepin County acted as an employer.  Governments acting as employers have more leeway than those acting as sovereigns. *Waters v. Churchill*, 511 U.S. 661, 671–72 (1994).  Because Hennepin County acted as an employer here, the statute placing limitations on the health commissioner, a government representative, is inapplicable.

Brokken contends that even acting as an employer, the Court can impose a reasonableness condition on Hennepin County. *Waters*, 511 U.S. at 677 (requiring

employers to act reasonably in its factfinding before infringing on free speech).  Hennepin County consulted information from the Center for Disease Control ("CDC"), EEOC, and others before and during its Vaccine Mandate.  The CDC still instructs that updated COVID-19 vaccinations are the best way to protect oneself from serious COVID-19 illness. *Stay Up to Date with COVID-19 Vaccines*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html (last updated Mar. 7, 2024).  Here, the Court finds Hennepin County's Policy and Vaccine Mandate to be reasonable.

Finally, the Court must determine if Brokken adequately pled that Hennepin County asked her to violate the law, a requirement of a wrongful discharge claim. *Collingham*, 2022 WL 1558410, at *2.  The court in *Collingham* again directly addressed this question and found that "[o]bviously, no statute or regulation **prohibits** anyone from being vaccinated against COVID-19."  *Id.* (emphasis in original).  While Brokken alleges that the Vaccine Mandate itself was a violation of law and thus her participation in that mandate would be a violation of the law, she has not demonstrated how receiving a COVID-19 vaccination or test would force her to violate the law and thus fails to plead a required element of a wrongful discharge claim.

In sum, because § 12.39 lacks a private right of action, the Court will dismiss the Minn. Stat. § 12.39 claim.  Even if the statute did have a private right of action, the Court

-20-

would still dismiss because the COVID-19 emergency had ended, Hennepin County acted reasonably as an employer, and Hennepin County did not ask Brokken to violate the law.

## CONCLUSION

Brokken's Complaint alleges discrimination under a number of different theories but ultimately, her case boils down to the allegation that she was forced to resign because she would not take COVID-19 tests in violation of her religious beliefs.  The Court finds that Brokken has failed to adequately plead constructive discharge as an adverse employment action as required for each of her claims.  Additionally, each claim suffers from individual pleading deficiencies which also support their dismissal.  Accordingly, the Court will grant Hennepin County's motion to dismiss and dismiss Brokken's claims without prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Defendant's Motion to Dismiss [Docket No. 7] is **GRANTED**; and

2.   Plaintiff's Complaint [Docket No. 1] is **DISMISSED without prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 29, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge